Wayne MILLS, Appellant,

v.

The STATE of Texas, Appellee.

Carolyn Sue MILLS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 13–94–372–CR through 13–94–383–CR and 13–94–384–CR.

Court of Appeals of Texas,
Corpus Christi.

Nov. 7, 1996.

Discretionary Review Refused
Feb. 19, 1997.

Becki Fahle, Luis Roberto Vera, Jr., San Antonio, for appellant.

Wiley L. Cheatham, District Attorney, Robert C. Lassmann, Assistant District Attorney, Cuero, for appellee.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr., and YAÑEZ, JJ.

## OPINION

SEERDEN, Chief Justice.

A jury found DeWitt County Sheriff Wayne Mills guilty of three felony offenses of tampering with governmental records,[1] one felony offense of misapplying fiduciary property,[2] and eight misdemeanor offenses of tampering with governmental records.[3] The jury also found the Sheriff's wife, Carolyn Sue Mills, guilty of one felony offense of tampering with a governmental record.[4] The trial court assessed punishments ranging from one year in the DeWitt County Jail to ten years in prison. All sentences were probated. The parties have filed four sets of appellate briefs, but we will address the points of error in one opinion because the offenses were prosecuted in one trial and the

---

1. Cause numbers 13–94–372–CR, 13–94–375–CR and 13–94–376–CR.

2. Cause number 13–94–373–CR.

3. Cause numbers 13–94–374–CR and 13–94–377–CR through 13–94–383–CR.

4. Cause number 13–94–384–CR.

points of error and facts overlap. We affirm the trial court's judgment in each case.

Before January 1993, the DeWitt County Jail did not operate an in-house commissary. People were permitted to bring items into the jail for the inmates, or jailers would purchase items from local stores. When Wayne Mills became sheriff in January 1993, he advocated opening a jail commissary to reduce the amount of contraband coming into the jail. The DeWitt County Commissioners Court accepted the idea and authorized $80 of County money to start the commissary. Commissary inventory was to be restocked out of commissary profits. County Auditor Phyllis Massey met with the Sheriff in early February to explain accounting procedures and record keeping. The Sheriff and a County Commissioner bought the commissary's initial inventory through a Desert Storm surplus program. When it turned out that some of these supplies were spoiled, and when the Sheriff balked at keeping records and said, "[F]orget the whole thing," the auditor thought that the sheriff had abandoned plans for a jail commissary.

Nonetheless, Sheriff Mills continued with his commissary plans. To stock supplies, the Sheriff and/or his wife would travel to outlets in Corpus Christi, Austin, Laredo, San Antonio or College Station. The commissary funds were handled in the jail without knowledge of the auditor and were not put into a county account.

During a spot audit of jail accounts on October 5, 1993, the County auditor discovered that the sheriff was operating a commissary. When the sheriff learned that Massey was going to audit the commissary account, he had Deputy Loosier and his secretary, Sharon Adams, try to get the books in order. They went through the records and came up with a shortage. When they informed the Sheriff of the shortage, he took a hundred dollars out of his shirt pocket and said, "See if that will help," but the account was still short. Mills then instructed Adams to fill out mileage vouchers for each commissary trip. The Sheriff also ordered Adams to throw away receipts and documents relating to the commissary and to create a new ledger to cover the period from May to October

1993. Adams gave the original ledger, which covered the period prior to May 1993, to Sheriff Mills, and she never saw it again. The Sheriff provided Massey with documents only from May forward.

Two Sheriff's department employees heard Sheriff Mills order Adams to destroy the commissary records. That day, one of the employees contacted the District Attorney, who contacted a County Commissioner, who recovered some commissary receipts from a courthouse dumpster. The original ledger was not produced or discovered.

The investigation into the commissary account revealed that Sheriff Mills and his wife submitted fake receipts for reimbursements from the commissary fund. Based on receipts obtained from stores where commissary items were purchased and inmates' records showing the prices charged for commissary items, the auditor estimated, at various times, that the commissary fund was short between $25.00 to $3,000.00. Massey also determined that some of the records showed that the Sheriff's wife, as purchasing agent for the commissary, was improperly receiving reimbursement for mileage as well as actual gas from county sources.

■ In cause 13–94–372–CR, the jury found that Sheriff Mills concealed, removed, destroyed, and otherwise impaired the availability of the commissary records, without legal authorization. The offense in this case was based on the sheriff's removal or destruction of the original commissary ledger. Sheriff Mills argues, *inter alia*, that the State failed to prove that he did not have authorization to destroy this record. Mills also contends that since he, as sheriff, had sole control of the funds, he needed no authorization to dispose of the funds' records. We disagree with the sheriff's assertions.

While there is no direct evidence to demonstrate that Sheriff Mills did not have legal authorization to destroy the ledger, we find sufficient circumstantial evidence to support such a finding. The auditor testified that she met with Sheriff Mills in February and showed him how to account for the commissary funds. These funds, while under the sheriff's control, are subject to audit by the

county auditor. Implicitly, the sheriff was not permitted to dispose of the records which the auditor would need to conduct an audit. Thus, we find that a rational finder of fact could infer from this evidence that the sheriff was not permitted to destroy the ledger.

 Sheriff Mills also contends that the trial court failed to instruct the jury that his secretary, Sharon Adams, was an accomplice witness whose testimony needed to be corroborated. Sheriff Mills did not raise this complaint at trial. Therefore, reversible error will occur only if any error caused egregious harm. *Saunders v. State,* 817 S.W.2d 688, 692 (Tex.Crim.App.1991). This degree of harm is present when a reviewing court finds that the case for conviction or punishment was actually made clearly and significantly more persuasive by the error. *Id.* We do not find egregious harm because we find ample evidence which tends to connect Sheriff Mills to the commission of the offense alleged here. As noted above, two Sheriff Department employees overheard Sheriff Mills telling his secretary to dispose of commissary records. Additionally, there is also independent evidence that Sheriff Mills signed and submitted vouchers, along with falsified gasoline receipts. This later evidence gave Sheriff Mills a motive to destroy the original ledger. Applying *Saunders,* we find no reversible error in the trial court's failure to charge on accomplice witness testimony.

 Sheriff Mills claims in causes 13–94–374–CR through 13–94–383–CR that the evidence is insufficient to sustain his convictions for tampering with governmental records. In the various tampering indictments, the State alleged that Mills intentionally made or used false expense account reimbursement claim forms or fuel receipts, with the intent that they be taken as genuine government records, to falsely reflect expenses incurred in travel to purchase jail commissary supplies. Mills correctly points out that to be convicted for these offenses, the documents in question had to be governmental records. The evidence shows that Sheriff Mills submitted the expense vouchers and fake gasoline receipts to obtain reimbursement for travel in connection with the purchase of commissary supplies. Nonetheless, Sheriff Mills argues that the receipts and vouchers do not constitute "government" records because the commissary is not a government. Carolyn Mills asserts the same argument in her appeal.

"Governmental record" is defined by Penal Code section 37.01 as (A) anything belonging to, received by, or kept by government for information, or (B) anything required by law to be kept by others for information of government. TEX. PENAL CODE ANN. § 37.01 (Vernon 1994). "Government" means:

the state; a county, municipality, or political subdivision of the state; or any branch or agency of the state, a county, municipality, or political subdivision.

TEX. PENAL CODE ANN. § 1.07(a)(15), renumbered § 1.07(a)(24), (Vernon 1994).

Both appellants argue (1) that the commissary is not a government and (2) that the sheriff merely holds commissary funds in trust for the prisoners of DeWitt County. We disagree with appellants' assertion that the records are not government records.

The Sheriff's Department is a branch or agency of the County. Furthermore, Sheriff Mills was permitted to operate a commissary under Local Government Code article 351.0415, which provided, at the time of the offense, in part:

(a) The sheriff of a county may operate . . . a commissary for the use of the prisoners committed to the county jail . . .

(b) The sheriff:

(1) has exclusive control of the commissary funds;

(2) shall maintain commissary accounts showing the amount of proceeds from the commissary operation and the amount and purpose of disbursements made from the proceeds; and . . .

(c) The sheriff may use commissary proceeds only to:

(1) fund, staff, and equip a program addressing the social needs of the county prisoners, including an education or recreational program and religious or rehabilitative counseling;

(2) supply county prisoners with clothing, writing materials, and hygiene supplies;

(3) establish, staff, and equip the commissary operation; or

(4) fund, staff, and equip a library for the educational use of county prisoners.

(d) at least once each quarter of a county's fiscal year, or more often if the county auditor desires, the auditor shall, without advance notice, fully examine the jail commissary accounts. The auditor shall verify the correctness of the accounts . . .

Acts 1989, 71st Leg. ch. 980, § 1, amended Acts 1991, 72 Leg. ch. 578 § 2.

Although the sheriff may have exclusive control of commissary funds and some discretion in how those funds are spent, commissary proceeds are subject to county oversight and may be spent only for limited purposes associated with the county jail operation. As the proceeds are subject to county oversight and are maintained by the Sheriff's Department, it is axiomatic that receipts, vouchers, and other documentation relating to the operation are received by or kept by government for information. We find the evidence sufficient to show that the vouchers and receipts were governmental records.[5]

■ In causes 13–94–372–CR through 13–94–383–CR, Sheriff Mills complains that the trial court erred in overruling his motions to quash the indictments because the indictments failed to give sufficient notice. Carolyn Mills asserts the same argument in her appeal. Appellants timely filed motions to quash, but they did not obtain rulings on these motions until both sides had rested. The State contends appellants did not preserve error. Appellants contend error was preserved because they filed pretrial motions and obtained rulings prior to judgment.

The Code of Criminal Procedure provides: If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding. Nothing in this article prohibits a trial court from requiring that an objection to an indictment or information be made at an earlier time in compliance with Article 28.01 of this code.

TEX.CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon Supp.1997).

■ This waiver and forfeiture provision requires a defendant to object, not merely file a motion. The simple filing of a motion is not sufficient to bring a matter to the trial court's attention. See Reyes v. State, 849 S.W.2d 812, 815 (Tex.Crim.App.1993) (motion for new trial must be presented); DeBlanc v. State, 799 S.W.2d 701, 709 (Tex.Crim.App.1990)(written objections to charge must be brought to trial court's attention); Chunn v. State, 821 S.W.2d 718, 720 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd) (motion to quash must be presented before date on which trial begins); but see Whitsey v. State, 853 S.W.2d 769, 772 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd)(motion filed but not presented until day of trial was timely).

Appellants rely on language from American Plant Food Corp. v. State, 508 S.W.2d 598 (Tex.Crim.App.1974).[6] As the defendant in American Plant food did not file a motion to quash, the language, even if it is interpreted as appellants desire, is not controlling. It is not even persuasive, because the Court

---

**5.** "Government" and "governmental record" were defined in the charge.

**6.** The language is as follows: "In each of the instant cases, appellant filed motions to quash. However, it does not appear from the records that said motions were ever brought to the attention of the trial court, or that a ruling was ever secured thereon. Consequently, only such defects as would render the indictments insufficient to support the convictions may be considered *after judgment* or by this Court. Two of the three grounds multifariously raised by appellant's second ground of error admittedly claim only that the allegations in the informations are general, vague, and indefinite. They may not be raised for the first time *following judgment*." *American Plant Food*, 508 S.W.2d at 604. (Emphasis added).

cites with approval *Wilson v. State*, 398 S.W.2d 291, 293 (Tex.Crim.App.1965), which states:

It has long been the rule in this Court that motions to quash must be presented prior to announcement of ready.

As appellants did not present their motions prior to announcement of ready, they did not object timely. The points of error regarding the motions to quash are overruled.

█ Sheriff Mills claims in causes 13–94–374–CR through 13–94–383–CR that the tampering statute is unconstitutionally vague because "there is no evidence that Mr. Mills knew that he or his wife were submitting documents that would be considered governmental records." Carolyn Mills asserts the same argument in her appeal. Appellants claim that the commissary statute does lead to the conclusion that the state or some other government entity might be the owner of the commissary fund.

When a statute is challenged as unconstitutionally vague, our concern is premised on notions of notice and due process. *Cain v. State*, 855 S.W.2d 714, 717 (Tex.Crim.App. 1993). Essentially, as a society we want people to know what conduct is prohibited before we enforce the laws which prohibit their conduct. *Id.*

When determining whether a state statute is unconstitutional on vagueness grounds, where no constitutionally protected right is concerned, the reviewing court need only scrutinize the statute to determine whether it is impermissibly vague as applied to the challenging party's specific conduct. *Id.* at 718. The fact it may be unconstitutional as applied in other circumstances is not sufficient. *Id.* That is, the reviewing court must look at the defendant's conduct alone, and then, the court must examine whether that conduct was clearly prohibited by the statute.

Sheriff Mills was a county official, operating a commissary in the county jail, using funds initially appropriated by the county, who was informed by the county auditor how to prepare the records for the operation, which was subject to review by the county auditor. The Sheriff submitted the receipts and vouchers in question to the commissary fund for reimbursement. The definition of government record, set forth above, includes anything received by or kept by government for information. As noted above, "government" includes any branch or agency of a county, and Texas law requires the county auditor to audit the commissary records periodically. From these statutes, and from common sense, a person of ordinary intelligence in the sheriff's position would have fair notice that receipts or vouchers submitted to the commissary fund for reimbursement are received by or kept by government for information. Carolyn Mills admitted in her testimony that the receipts were submitted for reimbursement and that they were not actually issued by any employee at J's Serve, Inc., where gasoline was allegedly purchased. A person of ordinary intelligence in Carolyn Mills' position would have fair notice that the receipts submitted to the commissary fund were received by or kept by government. We do not find the tampering statute unconstitutionally vague.

█ Sheriff Mills contends the evidence is insufficient in cause 13–94–376–CR [7] because the State failed to show that he was criminally responsible for any criminal conduct of his wife, Carolyn Sue Mills. Likewise, Carolyn Mills contends the evidence is insufficient to support her conviction for the same crime because there was no evidence of "actual action" or "party action," despite the fact that her signature appeared on the false gasoline receipt.

The indictment in this case alleged that the Sheriff and his wife, acting together, knowingly presented a fuel receipt (dated June 23, 1993) with knowledge of its falsity with the intent that it be taken as a genuine governmental record, with the intent to defraud and harm. Conceding that there is evidence to show that the sheriff manipulated the books in October upon learning that an audit was imminent, Sheriff Mills argues, nonetheless, that there is no evidence that the June receipt did not correctly reflect gasoline actually purchased for a county car and that Mills knew the receipt was falsified. Carolyn Mills

7. Trial court cause 94–3–8562.

argues that the evidence fails to show that (1) she submitted the gasoline receipt, (2) she helped Sheriff Mills manufacture the receipt, (3) the gasoline receipt did not represent an actual expense, or (4) she intended to tamper with government records even if the evidence did show that she signed a receipt knowing it was false.

We disagree with both appellants. The receipt reflects $27.47 for gasoline sold to "Sue Mills" at "J's Serve, Inc" on June 23, 1993. Laura Sanders, J's manager, reviewed the receipts from J's and opined that none of her employees filled them out. Carolyn Mills, who testified in her own defense, admitted that she took blank gas tickets from J's and filled in the tickets. In combination with evidence showing that Sheriff Mills submitted other receipts which were false, his conduct in ordering the destruction of receipts, and his ordering the manipulation of the books, we find the evidence sufficient to support his conviction in cause 13–94–376–CR. Likewise, there is evidence that Carolyn made the false receipt, and there is evidence that she knew the receipts were being submitted for reimbursement. We find the evidence sufficient to sustain the convictions.

■ In cause numbers 13–94–375–CR and 13–94–376–CR,[8] Sheriff Mills contends that it was error for the trial court to charge the jury that he could be found guilty of a third degree felony in these cases when the indictments failed to allege an intent to defraud or harm another. Carolyn Mills asserts the same argument with respect to her conviction in cause 13–94–384–CR. At the time of the offense, the Penal Code provided that the offense was a Class A misdemeanor unless the actor's intent was to defraud or harm another, in which event the offense was a felony of the third degree. See now TEX. PENAL CODE ANN. § 37.10(c) (Vernon 1994). The indictments allege that appellants acted with "the intent to defraud and harm." The jury charges, on the other hand, permitted the jury to convict appellants of the felony offenses if the jury found that they acted with the intent to defraud or harm *another*. Appellants did not object to the indictments or to the court's charges.

In *Fisher v. State*, 887 S.W.2d 49, 55–58 (Tex.Crim.App.1994), the Court addressed how a trial court should craft a jury charge when a case is tried on a defective indictment to which no objection was raised. It was concluded that the charge should be written in accordance with the controlling penal provision. *Id.* at 55. Applying *Fisher*, we find no error in the trial court's appending the term "another" onto the phrase "intent to defraud or harm."

■ Finally, appellants contend that they were denied effective assistance of counsel. The test to be applied in determining ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex.Crim.App. 1990). A defendant seeking relief must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Welborn*, 785 S.W.2d at 393. To show prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

When reviewing a claim of ineffective assistance, judicial scrutiny of counsel's performance must be highly deferential. *Id.* Whether the *Strickland* standard has been met is to be judged by the totality of the representation. *Id.* The *Strickland* standard has been adopted in Texas. *Hernandez v. State*, 726 S.W.2d 53, 54–59 (Tex.Crim. App.1986).

Appellants contend that trial counsel relied on *Constructors Unlimited, Inc. v. State*, 717 S.W.2d 169 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd), for his trial strategy to argue that the false documents Mills submitted for reimbursement were not governmental records. Appellate counsel notes that *Constructors Unlimited* was prosecuted under a different section of the Penal Code and argues that trial counsel apparently misread the case and relied on his misinterpretation

8. Trial court causes 94–3–8561 and 94–3–8562.

in preparing strategy for appellants. We find appellate counsel's argument meritless.

Appellants' complaint focuses on the definition of "governmental records," as if this was the only defensive tactic used by trial counsel. It was not. The defense strategy was multi-pronged, and counsel pursued a defense to show that Mills and his wife did not misappropriate any money, that the Courthouse establishment was out to get Mills, that some of the State's witnesses were incredible, that the commissary was established by private donations, and that the documents were not governmental records. As with many kinds of alleged ineffective assistance, the record here does not show why trial counsel pursued the strategy he did. *See, e.g., Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994). What the record does show, however, is that counsel's reliance on *Constructors* was only one portion of the defense strategy. Counsel sought directed verdicts on this ground, but he did not extensively rely on this ground during jury trial or during jury argument. Counsel should not be faulted for attempting to use all possible strategies.

 Carolyn Mills argues that she was denied the effective assistance of counsel because counsel failed to call a witness who would have supported the Millses' testimony that Carolyn drove her own car to Laredo with regard to the June 23 receipt. The testimony, Carolyn argues now, would have been relevant to rebut the State's theory that the Millses had "double dipped" on this occasion by each charging expenses to the County. Carolyn alleges that counsel could have but failed to call a witness to show that Carolyn and the Sheriff each drove separate cars. We do not find ineffective assistance in this instance because the record is not developed well and, even if the witness had testified, we fail to see its relevance as it relates to the offense of tampering with governmental records.

First, the only indication that there was another witness came from trial counsel who spoke up in court after the jury sent out a note requesting that certain testimony be read back. There are no bills of exception or affidavits to demonstrate what testimony the witness would have provided. Second, in light of Carolyn's testimony that she took blank J's receipts and completed them, combined with the manager's testimony that the handwriting on the receipts did not come from her or her employees, we fail to see how another witness's testimony would have affected the jury's determination that the receipts were false and submitted to government with the intent to harm. We find that appellants were not denied effective assistance of counsel.

The judgments of the trial court are affirmed.