**Frank Flores CUELLAR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–96–571–CR.**

Court of Appeals of Texas,
Corpus Christi.

Nov. 6, 1997.

Anne M. Marshall, Corpus Christi, for Appellant.

James D. Rosenkild, Assistant District Attorney, Corpus Christi, for Appellee.

Before SEERDEN, C.J., and CHAVEZ and RODRIGUEZ, JJ

## OPINION

CHAVEZ, Justice.

Appellant Frank Flores Cuellar was convicted of intoxication manslaughter and driving while intoxicated. The intoxication manslaughter charge was tried first, and, after the jury trial on that charge was completed, proceedings commenced on the driving while intoxicated charge. Appellant appeals from the intoxication manslaughter conviction by two points of error. The first point argues that the trial court erred in failing to quash the indictment because the victim of the offense was a fetus at the time of appellant's conduct and, therefore, was not an "individual" within the legal meaning of that term. The second point argues that the intoxication manslaughter statute was unconstitutionally vague as applied to this appellant, because the definition of an individual does not provide notice that a fetus fits within that definition. The appeal of the driving while intoxicated charge argues in a single point of error that the charge should have been dismissed on double jeopardy grounds, since driving while intoxicated does not require proof of any additional element not required in proving intoxication manslaughter. We affirm both convictions.

1. The Texas Penal Code defines "intoxicated" as having an alcohol concentration of .10 or more.

## Facts

Appellant drove his car into a car being driven by Jeannie Coronado, who was then seven and one-half months pregnant. As a result of the collision, Coronado was pinned between the seat and the steering wheel, with the steering wheel pushing into her abdomen. Both appellant and Coronado were taken to the hospital. Appellant's blood alcohol level was tested one and-a-half hours after the collision and found to have a concentration of .24.[1] Coronado's attending physician at the hospital observed fetal distress and therefore performed an emergency caesarian section. A live baby girl was born and named Krystal Zuniga. Shortly after birth the baby's head appeared swollen, indicating internal bleeding in the brain. Her condition deteriorated and she died approximately forty-three hours later. The medical examiner concluded that the cause of death was injury to the brain resulting from the automobile collision.

## Analysis

Appellant's first challenge to the intoxication manslaughter conviction pertains to the trial court's denial of appellant's motion to quash the indictment. Generally, an indictment which tracks statutory language should survive a motion to quash. *Olurebi v. State*, 870 S.W.2d 58, 61 (Tex.Crim.App. 1994). A motion to quash should be granted only if the language concerning the defendant's conduct is so vague or indefinite as to deny the defendant effective notice of the acts allegedly committed. *Bynum v. State*, 767 S.W.2d 769, 778 (Tex.Crim.App.1989). A trial court is not permitted to look behind the indictment by previewing the evidence to determine whether evidence supports the indictment. *Brooks v. State*, 642 S.W.2d 791, 795 (Tex.Crim.App.1982); *State v. Clarke*, 880 S.W.2d 854, 854–55 (Tex.App.—Corpus Christi 1994, pet. ref'd).

In this case the motion to quash was brought before the trial court in an unusual manner. The parties stipulated to certain facts solely for purposes of the hearing on

TEX. PENAL CODE ANN. § 49.01(2) (Vernon 1994).

the motion to quash. The document containing the stipulations was signed by both parties and indicates that the parties agreed to the stipulations "in the interests of a speedy resolution of questions of law." Despite the State's agreement with the procedure of holding the hearing on stipulated facts, the State now argues on appeal that it would have been improper for the trial court to consider the stipulated facts and grant the motion to quash based on the sufficiency of those facts. We hold that the State's willing participation in the hearing on stipulated facts bars its present complaint regarding this procedure. *See Janecka v. State*, 823 S.W.2d 232, 243–44 (Tex.Crim.App.1990) (State's participation without objection in direct appeal before special master waived right to complain about that procedure); *see also McFarland v. State*, 834 S.W.2d 481, 486 (Tex.App.—Corpus Christi 1992, no pet.) (appellant waived complaint regarding special judge presiding over competency hearing by failing to object).

■ Appellant's conviction in this case was for intoxication manslaughter. The intoxication manslaughter statute provides:

A person commits an offense if the person:

(1) operates a motor vehicle in a public place, an aircraft, or a watercraft; and

(2) is intoxicated and by reason of that intoxication causes the death of another by accident or mistake.

Tex. Penal Code Ann. § 49.08 (Vernon 1994). "Another" is defined in the Penal Code to mean a "person," a "person" is defined to include an "individual," and an "individual" is defined as "a human being who has been born and is alive." Tex. Penal Code Ann. § 1.07(5), (38), (27) (Vernon 1994).

In this case, it is undisputed that the victim died as a result of injuries received during the auto collision caused by appellant's drunk driving. It is also undisputed that the victim had not been born at the time of appellant's conduct, and it is undisputed that the victim later was born and later did meet the statutory definition of an individual. Therefore this case presents the question of whether the Penal Code authorizes a conviction only when a victim meets the definition of an individual at the time of the alleged misconduct, or whether a conviction may also be authorized if a victim attains the status of an individual after the alleged misconduct.

■ Provisions in the Penal Code are not to be strictly construed but rather are to be construed according to the fair import of their terms, to promote justice and effect the objectives of the code. Tex. Penal Code Ann. § 1.05(a) (Vernon 1994). The "has been born and is alive" definition in the Penal Code does not address the precise issue before us. "Has been born and is alive" does not tell us at what point in time the individual needs to have been born and be alive. The dissent seems certain that the victim's status under the law is frozen at the moment of the alleged misconduct. We do not believe the statute provides a clear mandate of this interpretation.[2] When the language of a statute is not plain but instead rather ambiguous, courts are permitted to consider extratextual factors. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). Among the extratextual factors that may be considered is the common law. Tex. Gov't Code Ann. § 311.023(4) (Vernon 1988). The Texas definition "has been born and is alive" closely resembles the ancient common law "born alive" doctrine. The common law provided that:

If a woman be quick with childe, and by a potion or otherwise killeth it in her wombe, or if a man beat her, whereby the child dyeth in her body, and she is delivered of a dead childe, this is a great misprision, and no murder; but if the child be born alive and dyeth of the potion, battery, or other

2. This interpretation is especially troublesome with a statute such as the intoxication manslaughter statute, for which it must be shown that the defendant "causes the death of another." Must the death be instantaneous with the alleged misconduct? If not, then why must the victim qualify as "another" at the moment of the alleged misconduct? We do not mean to assert that the clear meaning of the language of the penal code is that the victim need not qualify as "another" at the time of the alleged misconduct, only that the statutory language is ambiguous on this point, and that consulting extra-textual sources to discern the statutes' meaning is appropriate.

cause, this is murder; for in the law it is accounted a reasonable creature, *in rerum natura*, when it is born alive.

3 Coke, *Institutes* 58 (1648). Therefore, the common law would allow a conviction for not just manslaughter but also murder when a child is born alive and then dies as a result of prenatal injuries.

The state of New York, which shares the same "has been born and is alive" statutory definition of a person (*See* N.Y. PENAL LAW 125.05(1)), recently confronted the same issue presently before us. In *People v. Hall*, 158 A.D.2d 69, 557 N.Y.S.2d 879 (1990) the appellate division of the New York supreme court confronted these facts: Hall fired a gun, intending to hit Aaron. Instead he hit Brigette Garrett, who was approximately seven months pregnant, in the abdomen. Her baby Attallia was delivered by emergency caesarian section and lived for thirty-six hours before dying as a result of maladies caused by Hall's gunshots. The appellant argued that his murder conviction could not stand because Attallia was not a person under the legal definition of that term. However, focusing on the substantial evidence that Attallia was born and was alive for a period of time before her death, the New York court held that she was a person under New York criminal law and affirmed Hall's conviction. *Hall*, 557 N.Y.S.2d at 883.

When other states have faced vehicular manslaughter charges based on facts such as the facts before us, where the victim was born and lived for a short while before dying from prenatal injuries, they have consistently upheld the conviction. In *State v. Hammett*, 192 Ga.App. 224, 384 S.E.2d 220 (1989) the Georgia Court of Appeals reviewed a conviction for homicide by vehicle where a driver collided with a car containing a pregnant woman. The woman was taken to a hospital and an emergency caesarian section was performed. Her child lived for eleven hours before succumbing to injuries it suffered in the car crash. The Georgia court, referring to the common law "born alive" doctrine,

held that "it is not the victim's status at the time the injuries are inflicted that determines the nature of the crime,[3] but the victim's status at the time of death." *Id.* 384 S.E.2d at 221. The court contrasted the facts before it from those in *Billingsley v. State*, 183 Ga.App. 850, 360 S.E.2d 451 (1987), where a conviction for homicide by vehicle was reversed because the victim in that case was never born. *Hammett*, 384 S.E.2d at 220. Because the victim in *Hammett* was born and alive for a period of time, the conviction for homicide by vehicle in that case was upheld. *Id.*

In *Jones v. Commonwealth*, 830 S.W.2d 877 (Ky.1992), the Kentucky Supreme Court reviewed a conviction for manslaughter that resulted from a drunk driver colliding with a car driven by a pregnant woman. An emergency caesarian section was performed and a live baby born who lived for fourteen hours before dying from prenatal injuries suffered in the collision. The Kentucky court also distinguished these facts from those of a prior opinion in the state's jurisprudence, *Hollis v. Commonwealth*, 652 S.W.2d 61 (Ky. 1983), where a conviction was reversed because the victim was an unborn fetus who had not been born alive. *Jones*, 830 S.W.2d at 878. *Jones* relied on the common law "born alive" doctrine and affirmed the conviction. *Id.* at 879–80.

In *People v. Bolar*, 109 Ill.App.3d 384, 64 Ill.Dec. 919, 440 N.E.2d 639 (1982), an Illinois court faced the same sort of facts, where the defendant drove his car into a car containing a pregnant woman, the woman delivered her child by emergency caesarian section, and the child lived for a short period of time before dying from injuries sustained in the crash. Relying on the common law "born alive" doctrine, the Illinois court upheld the conviction for reckless homicide. *Id.* 64 Ill. Dec. at 923–25, 440 N.E.2d at 643–45.

Finally, *State v. Soto*, 378 N.W.2d 625 (Minn.1985) states that "the overwhelming majority of jurisdictions within the United States which have considered the issue have

---

**3.** In this case there was never any question that the behavior in question violated Georgia's criminal laws. The issue of the "nature of the crime" refers to the determination of whether the victim was a "person" and therefore a homicide conviction could be supported, or whether the State would be left to rely on Georgia's feticide statute.

held that a criminally caused death of a fetus is not homicide unless the fetus was born alive." [4] *Id.* at 628–29. In *Soto,* and in the cases *Soto* cites for its statement regarding the widespread application of the "born alive" doctrine, that doctrine prevented a conviction because the victim had never been born alive. *Id.* at 630. However, as demonstrated by the cases discussed above, when the victim is born alive and lives for a period of time before dying from prenatal injuries, the widely used "born alive" doctrine does allow a criminal conviction.

Appellant cites *Showery v. State,* 690 S.W.2d 689 (Tex.App.—El Paso 1985, pet. ref'd) for the proposition that the proper analysis is to consider whether the victim met the statutory definition of an individual at the time of the defendant's conduct. In that case, the appellant was a physician who withdrew a fetus from a pregnant woman who apparently wanted an abortion. After the baby was removed from the womb, the appellant then used various means to suffocate the baby. The baby exhibited signs of life after it was removed from the womb, including limb movements and indications of breathing. The El Paso court stated "[t]he jury was required to find that the individual allegedly murdered by the [a]ppellant had been born and was alive at the time of the alleged misconduct." *Id.* at 692.

Without such a finding, no conviction could have been authorized because, unless the victim had been born and was alive at the time of the alleged misconduct, there could be no other time when the victim met the statutory definition of an individual. Before the victim was extracted from the womb, the victim had not "been born." After the appellant's alleged misconduct, the victim was not "alive." The only way the victim could satisfy the "has been born and is alive" requirement was if the victim had been born and was alive at the moment of the alleged misconduct.

In the case before us, it is undisputed that Krystal Zuniga was born and alive after the alleged misconduct. Therefore, the finding

required in *Showery* is not required in this case.

It is not necessary that all of the elements of a criminal offense be immediately satisfied at the time of the defendant's conduct. It is axiomatic that a homicide conviction, requiring the death of the victim as an element of the offense, may stand even though the victim's death is not instantaneous with the defendant's conduct but results from that conduct at a later time. *See, e.g., Alba v. State,* 905 S.W.2d 581 (Tex.Crim.App.1995). To limit our perspective to the moment of the accused's conduct, as appellant urges, would be contrary to this well-established doctrine.

Furthermore, the civil law of this state recognizes the rights of a child who suffers some injury in the womb and is later born alive to be compensated for those prenatal injuries. A tort cause of action exists for injuries inflicted while the victim was in the womb, so long as the victim is later born and alive. *Yandell v. Delgado,* 471 S.W.2d 569, 569 (Tex.1971). In *Witty v. American Gen. Capital Dist., Inc.* 727 S.W.2d 503, 504 (Tex. 1987) the Texas Supreme Court acknowledged the doctrine stated in *Yandell. Witty,* 727 S.W.2d at 505. The *Witty* court refused to allow recovery under Wrongful Death Act, not because the victim was a fetus at the time of the alleged misconduct, but because the victim died in the womb and was never born alive. *Witty,* 727 S.W.2d at 505–06. The conduct of a woman who takes illegal drugs while pregnant can be considered "conduct endangering the physical or emotional well-being of the child" for purposes of involuntary termination of parental rights under section 161.001 of the Texas Family Code. *Dupree v. Texas Dept. of Protective and Regulatory Servs.,* 907 S.W.2d 81, 84 (Tex.App.—Dallas 1995, no writ); *In the Interest of Guillory,* 618 S.W.2d 948, 951 (Tex. Civ.App.—Houston [1st Dist.] 1981 no writ). A child whose father died while the child was in its mother's womb can inherit from the father and sue as his survivor, contingent on the child's subsequent live birth. *Nelson v. Galveston, H. & S.A. Ry. Co.,* 78 Tex. 621, 14

---

4. The *Soto* opinion noted that twenty-five of the twenty-seven states for which it could find rele-

vant reported cases applied the "born alive" doctrine. *Soto,* 378 N.W.2d at 628 n. 7.

S.W. 1021, 1023 (1890).[5] We see no reason why the criminal law should not mirror the civil law, and afford protection to children who are born and alive for a period of time before dying as a result of prenatal injuries.

The elements of intoxication manslaughter are (1) a person (2) operating a motor vehicle in a public place (3) who is intoxicated, and (4) by reason of that intoxication causes the death of another. It is undisputed that appellant was a person operating a motor vehicle in a public place while intoxicated. It is undisputed that Krystal Zuniga died by reason of Cuellar's intoxication. It is also undisputed that Krystal Zuniga was born and was alive for a period of time. Therefore, in applying the statutory definition "has been born and is alive" to the facts of this case, we hold that Krystal Zuniga was an "individual" under the criminal law of this state. Appellant's first point of error from the intoxication manslaughter conviction is overruled.

█ Appellant also contends that the intoxication manslaughter statute was unconstitutionally vague as applied to him. When a statute is challenged as unconstitutionally vague, our concern is premised on notions of notice and due process. *Cain v. State*, 855 S.W.2d 714, 717 (Tex.Crim.App.1993). Essentially, as a society we want people to know what conduct is prohibited before we enforce the laws which prohibit their conduct. *Id.* When determining whether a state statute is unconstitutional on vagueness grounds, where no constitutionally protected right is concerned, the reviewing court need only scrutinize the statute to determine whether it is impermissibly vague as applied to the challenging party's specific conduct. *Id.* at 718. That is, the reviewing court must look at the defendant's conduct alone, and examine whether that conduct was clearly prohibited by the statute. *Mills v. State*, 941 S.W.2d 204, 209 (Tex.App.—Corpus Christi 1996, pet. ref'd). The reviewing court should not just engage in a mere rhetorical critique, but should instead focus on a broader sense of fairness to the accused. *Bynum v. State*, 767 S.W.2d 769, 773 (Tex.Crim.App.1989).

█ Appellant cites *Collins v. State*, 890 S.W.2d 893 (Tex.App.—El Paso 1994, no pet.) in support of his argument that this statute was unconstitutionally vague as applied to him. In that case, the appellant had smoked crack cocaine while she was pregnant, causing her child to be born in a state of addiction and to suffer pain from withdrawal. The appellant was charged with injury to a child, but the El Paso court ruled that the injury to a child statute was unconstitutionally vague as applied to her. *Id.* at 897. Implicit in the court's decision was the holding that, given Texas's definition of an individual as a person who has been born and is alive, applying a criminal statute against one who injures a fetus is unconstitutionally vague, even if the fetus is later born alive and is harmed by the prenatal injuries. To the extent this holding would compel us to hold that the intoxication manslaughter statute was unconstitutionally vague as applied to the facts of this case, we decline to follow it.

Appellant does not dispute that he had sufficient notice that, in driving his car while intoxicated, he was violating the criminal law. Appellant contends instead that he lacked adequate notice that a person such as Krystal Zuniga, who was in the womb at the time of his conduct, could be included in the definition of an individual under the intoxication manslaughter statute. This same argument was made by the appellant in *Hall*, to which the New York court responded "[i]t is axiomatic that a perpetrator of illegal conduct takes his victims as he finds them, so it is entirely irrelevant whether defendant actually knew or should have known that a pregnant woman was in the vicinity and that her fetus could be wounded as a result of his actions." *Hall*, 557 N.Y.S.2d at 885. If we accepted appellant's reasoning, then whenever a court resolves an unsettled issue of statutory interpretation, that court would then be obligated to acquit the defendant on the ground that the statute was unconstitutionally vague prior to the court's resolution of the issue. Focusing on a broader sense of fairness to the accused, this is not a case where a defendant is ambushed by a vague provision in the criminal law he could not

5. The continuing validity of this old case was acknowledged in *Witty*, 727 S.W.2d at 505.

have imagined would apply to his conduct. By driving on a public street in an intoxicated state, Cuellar accepted the risk that he might cause the death of another and be subject to conviction for intoxication manslaughter.

Appellant's second point of error on his intoxication manslaughter conviction is overruled.

### The D.W.I. Conviction

Appellant's complaint regarding his conviction for driving while intoxicated is that this conviction was barred by the double jeopardy prohibition. After appellant was convicted of intoxication manslaughter, appellant filed his notice of appeal of that conviction on November 4, 1996. At the same time appellant filed a special plea arguing that the State's prosecution of appellant for driving while intoxicated was barred by double jeopardy.

██ Prohibitions against double jeopardy are found in the Fifth Amendment to the United States Constitution and in article I, section 14 of the Texas Constitution. The Fifth Amendment prohibition against double jeopardy is fully applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 787, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). The State and Federal double jeopardy provisions are conceptually identical. *Phillips v. State*, 787 S.W.2d 391, 393 n. 2 (Tex.Crim.App.1990).

██ Where prosecution is sought for multiple offenses arising from the same conduct, the double jeopardy prohibition is violated unless each offense requires proof of an additional fact that the other does not. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *State v. Hensley*, 866 S.W.2d 28, 29 (Tex.Crim.App. 1993). Appellant contends that the offense of driving while intoxicated does not require

proof of any facts that are not also required to prove the offense of intoxication manslaughter, and therefore his conviction for intoxication manslaughter bars his prosecution for driving while intoxicated. However, appellant's conviction for intoxication manslaughter had been appealed at the time he filed his special plea and therefore was not a final conviction when the charge of driving while intoxicated came before the trial court.[6] Only a final conviction in a former case will support a plea of double jeopardy based on the former conviction. *Dailey v. State*, 162 Tex.Crim. 387, 285 S.W.2d 733, 733 (1955); *Hosey v. State*, 760 S.W.2d 778, 780 (Tex. App.—Corpus Christi 1988, pet. ref'd.) We hold that the trial court did not err in refusing to grant appellant's special plea of double jeopardy and overrule appellant's sole point of error regarding his conviction for driving while intoxicated.

The judgment of the trial court is AFFIRMED.

RODRIGUEZ, J., dissents.

RODRIGUEZ, Justice, dissenting.

Because I do not believe the legislature has defined "another," "person," or "individual" to include an unborn fetus, even if later born alive, I dissent from the majority's disposition of points of error one and two.

In *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991), the court of criminal appeals, relying on TEX. CONST. art. II, § 1, stated the "lawmaking" function is assigned to the legislature and the "law interpreting" function is assigned to the judiciary. In discharging this assignment, the judiciary should "seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." *Boykin*, 818 S.W.2d at 785. *See also, Camacho v. State*, 765 S.W.2d 431, 433 (Tex.Crim.App.1989). To determine legislative intent, we focus first on the literal

---

6. Appellant did not seek a continuance of the driving while intoxicated case on the grounds that the pending status of his appeal of the intoxication manslaughter conviction deprived him of his double jeopardy defense. Although appellant did request a continuance, the continuance was requested because appellant's attorney had another trial setting, and no request was made to postpone the trial until after appellant's intoxi-

cation manslaughter case reached final resolution. If appellant had requested a continuance until the finalization of his first conviction, the trial court would have been obligated to grant it. *Westbrook v. State*, 88 Tex.Crim. 223, 225 S.W. 750, 751 (1920); *Harrison v. State*, 69 Tex.Crim. 152, 151 S.W. 552, 553 (1912); *Powell v. State*, 42 Tex.Crim. 11, 57 S.W. 94, 95 (1900).

text of the statute because this is the only definitive evidence of what the legislators intended when the statute was enacted into law. *Boykin*, 818 S.W.2d at 785. If the statute is clear, the inquiry is over. *Ex parte Matthews*, 933 S.W.2d 134, 138 (Tex.Crim. App.1996).

Contrary to the majority, I find no ambiguity in the intoxication manslaughter statute. That statute provides that a person commits the offense if he is intoxicated and by reason of that intoxication, causes the death of another by accident or mistake. TEX. PENAL CODE ANN. § 49.08 (Vernon 1994). "Another" is ultimately defined in the penal code as "a human being who *has been* born and *is* alive." TEX. PENAL CODE ANN. §§ 1.07(5), (27), and (38) (Vernon 1994) (emphasis added).

We must presume the legislature did not make a mistake in choosing the words and grammatical structure used in this statute. The grammatical structure of this sentence clearly evidences the legislature's intent that an entity must already be living at the time the proscribed conduct occurs. The penal code has not proscribed any conduct with respect to a fetus, and the legislature, by its definitions of "another," "person," and "individual" has specifically limited the application of our penal laws to conduct committed against a human being who has been born and is alive. The United States Supreme Court has said that the unborn are not persons under the Fourteenth Amendment. *Roe v. Wade*, 410 U.S. 113, 158, 93 S.Ct. 705, 729, 35 L.Ed.2d 147, (1973). I conclude therefore that the legislature intended that any conduct proscribed by the penal code must occur against a victim who "has been born and is alive" at the time the conduct occurs. *See Collins v. State*, 890 S.W.2d 893, 898 (Tex.App.—El Paso 1994, no pet.); *Boushey v. State*, 804 S.W.2d 148, 150 (Tex. App.—Corpus Christi 1991, pet. ref'd) (under Texas law, a "person" is defined as a "human being who has been born and is alive").

I find *Showery v. State*, 690 S.W.2d 689 (Tex.App.—El Paso 1985, pet. ref'd), to be persuasive. In that case, a doctor delivered a fetus and then caused the death of the newborn by suffocating it. The jury charge defined "individual" as "a human being who has been born and is alive" as prescribed by § 1.07(a)(17) of the penal code. Applying the foregoing definition, the *Showery* charge required the jury to find that the individual allegedly murdered by Showery had been born alive and was alive at the time of the alleged misconduct.

In affirming Showery's conviction, the El Paso Court of Appeals noted that the penal code necessitated findings of live birth and actual life at the time of Showery's conduct. *Showery*, 690 S.W.2d at 694. I see no reason to apply a different standard here. In order for the jury to convict appellant, the penal code necessitated findings of live birth and actual life at the time of appellant's conduct. It is uncontroverted that Ms. Coronado had not yet given birth to Krystal Zuniga at the time of the accident; thus there was no actual life at the time of appellant's conduct.

It is a rule of statutory construction that words and phrases omitted from a statute are presumed to be omitted for a purpose. If the legislature had intended criminal consequences for conduct occurring before the birth of the fetus, it could have easily done so. For example, in TEX.REV.CIV. STAT. ANN. art. 4512.5 (Vernon 1976), the legislature prohibited destroying the "vitality or life in a child *in a state of birth and before actual birth.*" (Emphasis added).[1] If the legislature had intended for criminal consequences to attach to conduct occurring before the "victim" is born, it could have defined "another" in such a manner as to apply to conduct occurring before birth. It chose not to do so.

I find nothing in the Texas Penal Code to demonstrate a legislative intent that an unborn fetus, even if later born alive, is to be embraced within the scope of the intoxication manslaughter statute. As such, I find no ambiguity in the statute necessitating the application of the extra-textual factors considered and applied by the majority. As stated by the dissent in *Presley v. Newport Hosp.*, my conclusion is

1. This article was not invalidated by the Supreme Court's decision in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Op. Tex. Atty. Gen. No. H–369 (1974).

... in no way dependent upon whether a fetus is a person in the philosophical, theological, or scientific sense, nor is my belief based upon the Supreme Court's ... pronouncements in the area of abortion. [Even though] we have made great strides in the field of the sciences and we have read with great respect the writings of learned philosophers and theologians, we [must] remember that such individuals cannot create a right of action at law, for this is the job of the Legislature.

117 R.I. 177, 365 A.2d 748, 756 (1976) (Kelleher, J., dissenting) (cited by *Witty v. Am. Gen. Capital Dist., Inc.*, 727 S.W.2d 503, 504–05 (Tex.1987)).

By its opinion, the majority holds that the legislature, in enacting § 49.08, intended "another" to include a viable fetus, and has declared by judicial *fiat* that the time has come to prosecute, under the intoxication manslaughter statute, one who inflicts injury upon an unborn, but viable fetus whose death does not occur until after it has been delivered. In so doing, the majority has drastically rewritten the manslaughter statute under the guise of "construing" it. From such judicial activism I must dissent.

Relying on *Collins*, I would also sustain appellant's second point of error, that the statute is unconstitutionally vague as applied to his conduct. The majority wholly fails to address *Collins's* discussion of legislative intent with respect to the definition of a person, choosing instead to summarily dismiss the El Paso Court of Appeals's well reasoned opinion because it conflicts with the majority's perception that § 49.08 of the Texas Penal Code is ambiguous.

Appellant clearly alleged he lacked adequate notice that a "person" such as Krystal Zuniga could be included in the definition of "another;" thus, it is irrelevant that, as pointed out by the majority, he did not dispute he had sufficient notice he was driving his car while intoxicated.

To determine whether a criminal statute is vague, the initial inquiry should be whether an ordinary, law-abiding citizen would have received sufficient information that his conduct risked violating a criminal law. *Bynum v. State*, 767 S.W.2d 769, 773 (Tex.Crim.App. 1989); *Collins*, 890 S.W.2d at 897. Because there is nothing in § 49.08 which gives an ordinary citizen notice that he could be prosecuted for injury to a fetus, I would hold that this statute is unconstitutionally vague as applied to appellant.

My decision rests, of course, with what I perceive the law to be in this matter. I am, however, in no way insulated from feelings which acknowledge the anguish suffered by Ms. Coronado in the death of her child and the scope of the overwhelming tragedy that has occurred. I am constrained by the statute as it has been enacted by our legislature. If the law is to be changed to allow prosecution for conduct such as appellant's, that change must come from the legislature, not from this Court. *See Edinburg Hospital Authority v. Trevino*, 941 S.W.2d 76, 79, n. 1 (Tex.1997).