GRIFFITHS, Individually and as the Administrator of the Estates of
Taylor Nicole Griffiths and Nathan James Griffiths, Appellant,

v.

DOCTORS HOSPITAL et al., Appellees.

[Cite as *Griffiths v. Doctors Hosp.*, 150 Ohio App.3d 234, 2002-Ohio-6173.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 2002 CA 00122.

Decided Nov. 12, 2002.

Paul G. Perantinides and Antonios P. Tsarouhas, for appellant.

Dirk E. Riemenschneider, Ronald M. Wilt and Timothy A. Spirko, for appellees.

Gwin, Presiding Judge.

{¶ 1} Appellant Timothy Griffiths, individually and as the administrator of the estates of Taylor Nicole and Nathan James Griffiths, appeals from a summary judgment of the Stark County Court of Common Pleas dismissing his wrongful death action against appellees Rose Center for Women, Diane Duckworth, D.O., and Michael Eighan, M.D.

{¶ 2} "I. The trial court erred in granting defendants-appellees' Rose Center for Women, Diane R. Duckworth D.O., and Michael J. Eighan M.D.'s motion for summary judgment."

{¶ 3} "II. The trial court erred when it denied plaintiff-appellant's motion for leave to amend plaintiff's complaint to add Kristina Griffiths as a party plaintiff to include her individual malpractice claim and plaintiff's loss of spousal support."

{¶ 4} In December 1998, Kristina Griffiths discovered that she was pregnant. During her pregnancy, she was treated by Drs. Duckworth and Eighan of the Rose Center for Women, all appellees in the instant case.

{¶ 5} On December 16, 1998, Mrs. Griffiths had an ultrasound, which revealed that she had a possible bicornate uterus and uterine fibroids. The ultrasound also revealed that she was carrying twins.

{¶ 6} In December 1998, and again in January 1999, Mrs. Griffiths had two episodes of heavy vaginal bleeding. On March 21, 1999, she presented to Doctor's Hospital, complaining of abdominal pain and premature labor. She was admitted to the hospital. The next day, she was transferred to Akron General Medical Center.

{¶ 7} On March 25, 1999, Mrs. Griffiths suffered a placental abruption and delivered both of the fetuses, which were only twenty-one weeks old. The fetuses survived for approximately one and one-half hours after delivery. The stated cause of death was extreme prematurity with underlying causes of premature labor, placental abruption, and incompetent cervix. No resuscitation efforts were made on behalf of the fetuses based on an earlier decision made by appellant and Mrs. Griffiths following a discussion with Dr. Stewart concerning the significance of birth at twenty-one weeks.

{¶ 8} On March 20, 2000, appellant filed the instant action alleging medical malpractice and wrongful death in Cuyahoga County. The named defendants were Doctors Hospital, Northeast Ohio Emergency Affiliates, the Rose Center for Women, Diane Duckworth, D.O., and Michael Eighan, M.D. The case was transferred to Stark County on March 11, 2001. On May 5, 2001, appellant voluntarily dismissed defendant Northeast Ohio Emergency Affiliates. On April 2, 2002, the court entered summary judgment in favor of Doctor's Hospital. Appellant did not appeal from this judgment. On February 7, 2002, the trial court granted the motion for summary judgment filed by appellees in the instant case.

{¶ 9} On February 11, 2002, appellant filed a motion for leave to file an amended complaint, seeking to add Kristina Griffiths as a party, and to allege

additional claims on her behalf. The court overruled the motion on March 18, 2002.

## I

{¶ 10} In his first assignment of error, appellant argues that the court erred in dismissing his action on summary judgment, finding that he did not have a cause of action for wrongful death of the prematurely born twins.

{¶ 11} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as did the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 506 N.E.2d 212. Therefore, we must refer to Civ.R. 56, which provides:

{¶ 12} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

{¶ 13} Pursuant to the above rule, a trial court may not enter summary judgment if it appears that a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the nonmoving party has no evidence to prove its case. The moving party must specifically point to some evidence that demonstrates that the nonmoving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the nonmoving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

{¶ 14} An action for wrongful death did not exist at common law. An action for wrongful death is a statutory action providing for damages proportioned to the pecuniary injury resulting to the persons for whose benefit the action is brought. *Burns–Bowe Baking Co. v. Pakos* (1930), 9 Ohio Law Abs. 262, 1930 WL 2766. The right to bring such an action, however, was conferred by the General Assembly in R.C. 2125.01 and is the only civil remedy available to

compensate surviving beneficiaries. *Karr v. Sixt* (1946), 146 Ohio St. 527, 33 O.O. 14, 67 N.E.2d 331; *Keaton v. Ribbeck* (1979), 58 Ohio St.2d 443, 12 O.O.3d 375, 391 N.E.2d 307.

{¶ 15} R.C. 2125.01 provides:

{¶ 16} "When the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued, or the administrator or executor of the estate of such person, as such administrator or executor, shall be liable to an action for damages * * *." *Werling v. Sandy* (1985), 17 Ohio St.3d 45, 476 N.E.2d 1053.

{¶ 17} In cases where injury was allegedly caused to a fetus, Ohio law requires that the fetus must be shown to have been viable at the time of injury. *Williams v. Marion Rapid Transit, Inc.* (1949), 152 Ohio St. 114, 39 O.O. 433, 87 N.E.2d 334.

{¶ 18} The term "viable" refers to the point in prenatal development at which time a fetus is capable of independent existence if removed from the mother's womb. It has often been stated that a fetus ordinarily becomes viable between the twenty-fourth and twenty-eighth weeks of the pregnancy. *Werling,* supra.

{¶ 19} In *Werling,* the Ohio Supreme Court stated:

{¶ 20} "We recognize that our adoption of the viability test will present some practical problems. The term 'viability' is an elusive one since not all fetuses arrive at this stage of their development at an identical chronological point in their gestation. The concept may also become increasingly difficult to apply with further developments surrounding the sophisticated medical techniques which allow a child to be conceived outside the mother's womb. Indeed, some commentators have questioned the standard and suggest the adoption of a causation test which permits recovery for an injury sustained by a child at any time prior to his birth if it can be proven that the injury was the proximate result of a wrongful act. However, for the purposes of this appeal, we believe the better reasoned view is to recognize the viable child as a person under the statute rather than to designate the same status to a fetus incapable of independently surviving a premature birth." Id.

{¶ 21} In the criminal arena, Ohio defines "person" to include an unborn human who is viable. R.C. 2901.01(B)(1)(a)(ii). The statute further defines viable as the state of development of a human fetus at which there is a realistic possibility of maintaining and nourishing of a life outside the womb, with or without temporary artificial life-sustaining support. R.C. 2901.01(B)(1)(c)(ii).

Further, Ohio's homicide statutes define the offenses to include causing the death of another, or the "unlawful termination of another's pregnancy." E.g., R.C. 2903.01(A); R.C. 2903.02(A); R.C. 2903.03(A). The criminal statutes have thus extended protection to a fetus to a greater extent than does the civil law.

{¶ 22} In the instant case, the court found that appellant presented no expert testimony that the children were viable at the time of their birth. However, the twins were born alive, and independently sustained life outside the womb for approximately one and one-half hours. This evidence that the twins did in fact sustain life outside the womb, albeit for a short period of time, is sufficient evidence to withstand summary judgment on the issue of viability. As recognized by the *Werling* court, the concept of viability is somewhat elusive, particularly in a case such as this where the fetuses demonstrated some capacity to survive independently outside the womb. The issue of viability sub judice remains a disputed question of fact to be determined by the jury.

{¶ 23} The first assignment of error is sustained.

## II

{¶ 24} In his second assignment of error, appellant argues that the trial court erred and abused its discretion when it denied appellant's motion to amend the complaint pursuant to Civ.R. 15. We disagree.

{¶ 25} More specifically, appellant's second assignment of error concerns the trial court's denial of the plaintiff's motion to add Kristina Griffiths as a new party plaintiff with a cause of action sounding in medical malpractice. The plaintiff's motion was made in February 2002, well after the statute of limitations had run on Kristina's claim. To come within the statute of limitations, the amended complaint would have to relate back to the date of the original complaint.

{¶ 26} Civ.R. 15(C) governs the relation back of amended pleadings:

{¶ 27} "* * * An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."

{¶ 28} The Ohio Rules of Civil Procedure, including Civ.R. 15(C), were patterned after the Federal Rules of Civil Procedure. The 1966 Advisory Committee Notes to Federal Rule 15(c) state: "The relation back of amendments changing plaintiffs is not expressly treated in * * * Rule 15(c) since the problem

is generally easier. \* \* \* [T]he chief consideration of policy is that of the statute of limitations, and the attitude taken in \* \* \* Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs." *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 529 N.E.2d 449.

{¶ 29}   The primary purpose of Civ.R. 15(C) is to preserve actions which, through mistaken identity or misnomer, have been filed against the wrong person.   Id. No mistake or misnomer is alleged here, and Kristina waited almost three years before attempting to bring her action for medical malpractice.

{¶ 30}   Federal courts have allowed relation back when the new plaintiff is the real party in interest or an original plaintiff brings a new cause of action in a different capacity, but generally not when a new plaintiff brings a new cause of action.   Id. See *Marlowe v. Fisher Body* (C.A.6, 1973), 489 F.2d 1057, 1064; *People of the Living God v. Star Towing Co.* (E.D.La.1968), 289 F.Supp. 635, 641.

{¶ 31}   Therefore, we affirm the dismissal of the plaintiff's motion to add Kristina as a party plaintiff.

{¶ 32}   Appellant's second assignment of error is overruled.

{¶ 33}   The summary judgment of the Stark County Court of Common Pleas dismissing appellant's complaint against appellees is reversed.   The judgment overruling appellant's motion to add Kristina as a party plaintiff is affirmed. This cause is remanded to that court for further proceedings according to law, consistent with this opinion.

Judgment reversed in part,
affirmed in part
and cause remanded.

FARMER and BOGGINS, JJ., concur.