Shantel GONZALES, Plaintiff–Appellee and Cross–Appellant,

v.

Veronica G. MASCARENAS, Defendant–Appellant and Cross–Appellee.

No. 06CA1903.

Colorado Court of Appeals, Div. V.

June 12, 2008.

Anderson, Hemmat & Levine, LLC, Chad P. Hemmat, Ethan A. McQuinn, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Lapin & Associates, P.C., James B. Lapin, Denver, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge ROY.

Defendant, Veronica G. Mascarenas, appeals the wrongful death jury verdict in which she was found fifty percent liable for injuries suffered by an unborn child in an automobile accident. Plaintiff, Shantel Gonzales, cross-appeals the trial court's denial of several of her motions in limine regarding allegedly prejudicial evidence. We affirm.

Plaintiff, who was a passenger in defendant's vehicle, was twenty to twenty-two weeks pregnant at the time of the accident. Because she was pregnant, plaintiff was taken to a hospital for observation and examina-

tion, where she remained for two days. One day following her discharge from the hospital, she suffered massive vaginal bleeding, returned to the hospital, and was diagnosed with placental abruption (placental separation from the wall of the uterus). Because of the threat to plaintiff's life and health, the physicians performed an emergency cesarean section. A male child was born alive and lived for one hour and six minutes without medical intervention before expiring.

Plaintiff brought a personal injury action for her own injuries and a wrongful death claim for the death of her child. The driver of the second vehicle involved in the accident left the scene and was never identified.

The parties stipulated to an amount for the reasonable value of plaintiff's medical expenses, and the jury did not award plaintiff any additional damages for her own injuries. However, it awarded $1,500 in economic damages and $100,000 in noneconomic damages for the wrongful death of her child, and apportioned fifty percent of the negligence to defendant. The trial court then entered judgment against defendant in the amount of $64,948.61, inclusive of costs and interest.

## I. The Wrongful Death Statute

The questions presented on appeal are (1) whether a wrongful death action may be maintained for the death of a nonviable fetus born alive; and, if so, (2) whether it can be maintained where the child, though born alive, is not viable at birth. We answer both questions in the affirmative.

The Colorado wrongful death statute, section 13–21–202, C.R.S.2007, provides as follows:

When the death of *a person* is caused by a wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable, if death had not ensued, shall be liable in an action for damages notwithstanding the death of the party injured. (Emphasis added.)

Colorado's statute is a wrongful death statute. *Fish v. Liley,* 120 Colo. 156, 160, 208 P.2d 930, 932 (1949); *see also Rowell v. Clifford,* 976 P.2d 363, 364 (Colo.App.1998) (wrongful death statute). Our wrongful death statute does not define the word "person." However, that term is defined in section 2–4–401(8), C.R.S.2007, as, for our purposes, "any individual."

Plaintiff called her treating obstetrician-gynecologist as an expert witness. The physician testified that the child was born alive and lived without medical intervention for one hour and six minutes. Oxygen deprivation caused by the inadequate development of the lungs caused the child's heart to stop beating. Both a birth certificate and a death certificate were issued. Prior to the birth, plaintiff was advised by her physician that the child would not survive.

The physician further testified that pediatricians determine whether to treat such a child, but heroic measures are not generally undertaken for children who are born prior to twenty-four weeks of gestation. She expressed her opinion formed immediately following birth that the gestation period was twenty-two weeks and that the child could not survive outside the womb even with aggressive medical intervention. In addition, the physician testified that ultrasound measurements taken prior to birth indicated a gestation period of twenty and two-sevenths weeks. Applying an APGAR (activity, pulse, grimace, appearance, and respiration) rating, for which a normal score is between seven and ten, she testified that the child had a rating of two at one minute following birth and one at five minutes, which are signs of distress. Finally, she stated that, absent the abruption, there were no indications that the child would not have survived to term. The physician was not expressly asked, and did not expressly opine, as to whether the child was viable.

There are three types of statutes permitting an action for the death of a person: (1) a wrongful death statute; (2) a survivorship statute; and (3) a hybrid statute. A wrong-

ful death statute, such as ours, gives the claim to designated survivors, and the damages are those suffered by the survivors. A survivorship statute gives the claim to the decedent's estate, and the damages are the pecuniary losses suffered by the decedent, normally including pain and suffering. *See Pezzulli v. D'Ambrosia*, 344 Pa. 643, 26 A.2d 659, 661 (1942). A hybrid statute, as the name implies, has features of both. For example, in Pennsylvania, an action commenced by the decedent prior to death for his or her injuries continues in the probate estate, and, if no action is brought by the decedent prior to death, the action belongs to survivors with the damages measured by their loss. *Id.*

The viability of a child at the time of injury is a requirement for recovery under a wrongful death or survivorship statute in several states. *See Brown v. Green*, 781 F.Supp. 36, 38 (D.D.C.1991) (no wrongful death action for premature birth and subsequent death of a child that was not viable at the time of the injury under a hybrid statute); *Lollar v. Tankersley*, 613 So.2d 1249, 1252–53 (Ala. 1993) (no claim for death of a child that was not viable at the time of injury or death under a hybrid statute); *Ferguson v. District of Columbia*, 629 A.2d 15, 17 (D.C.1993) (no action when nonviable child dies shortly after birth under a hybrid statute); *Miller v. Kirk*, 120 N.M. 654, 905 P.2d 194, 197 (1995) (nonviable child is not a person under wrongful death statute even if it shows signs of life outside the womb and dies within minutes); *Griffiths v. Doctors Hosp.*, 150 Ohio App.3d 234, 780 N.E.2d 603, 606–07 (2002) (injury to child that was not viable is not actionable, but summary judgment is not appropriate when twenty-one-week fetuses survived for one and one-half hours after delivery); *Miccolis v. AMICA Mut. Ins. Co.*, 587 A.2d 67 (R.I.1991) (nonviable child is not a person within the meaning of wrongful death statute); *see also* Roland F. Chase, Annotation, *Liability for Prenatal Injuries*, 40 A.L.R.3d 1222, §§ II(B)(6)(b) (statute) & II(A)(3)(b) (common law) (2007) (collecting cases).

However, if the child is not viable at the time of injury but is born alive, the majority of the courts that have considered the issue permit a wrongful death action. *See Wolfe v. Isbell*, 291 Ala. 327, 280 So.2d 758, 761–64 (1973) (death of nonviable child who was born and lived for fifty minutes is actionable under wrongful death statute); *Simon v. Mullin*, 34 Conn.Supp. 139, 380 A.2d 1353, 1357 (1977) (death of nonviable child born at four months and died the day after birth is actionable); *Hornbuckle v. Plantation Pipe Line Co.*, 212 Ga. 504, 93 S.E.2d 727, 728 (1956) (nonviable child who was injured but lived can maintain action for injuries); *Daley v. Meier*, 33 Ill. App.2d 218, 178 N.E.2d 691 (1961) (same); *Group Health Ass'n v. Blumenthal*, 295 Md. 104, 453 A.2d 1198, 1206–07 (1983) (death of nonviable child born at four and one-half months who lived for two and one-half hours was later actionable); *Torigian v. Watertown News Co.*, 352 Mass. 446, 225 N.E.2d 926, 927 (1967) (death of nonviable fetus born at three and one-half months who lived for two and one-half hours was later actionable); *Bennett v. Hymers*, 101 N.H. 483, 147 A.2d 108, 110 (1958) (nonviable child who was injured but lived can maintain action for injuries); *Kelly v. Gregory*, 282 A.D. 542, 125 N.Y.S.2d 696, 697–98 (1953) (same); *Pino v. United States*, 183 P.3d 1001, 1004 (Okla.2008) (wrongful death action may be maintained for the death of a stillborn nonviable fetus under survivor statute); *Nealis v. Baird*, 996 P.2d 438, 454–55 (Okla.1999) (wrongful death action may be maintained under survivor statute for the death of a nonviable fetus born gasping at twenty to twenty-one weeks regardless of its ability to sustain life for any particular period of time); *Hudak v. Georgy*, 535 Pa. 152, 634 A.2d 600, 602–03 (1993) (death of nonviable triplets born at twenty-four weeks, two dying in the delivery room after twenty minutes and the third ten hours later, is actionable under hybrid statute); *Sylvia v. Gobeille*, 101 R.I. 76, 220 A.2d 222, 223–24 (1966) (nonviable child who was injured but lived can maintain action for injuries); *Kalafut v. Gruver*, 239 Va. 278, 389 S.E.2d 681, 683–84 (1990) (death of nonviable child born at twenty-one weeks who lived for eighty minutes is actionable); *Farley v. Sartin*, 195 W.Va. 671, 466 S.E.2d 522 (1995) (same); *see also* Chase, §§ II(B)(6)(a), II(B)(7). *But see Stanford v. St. Louis–San Francisco Ry. Co.*, 214 Ala.

611, 108 So. 566 (1926), *overruled by Huskey v. Smith,* 289 Ala. 52, 265 So.2d 596 (1972).

Section 869 of the Restatement (Second) of Torts is consistent with the majority rule and states that "[o]ne who tortiously causes harm to an unborn child is subject to liability to the child for the harm if the child is born alive." Restatement § 869(1). Section 869 does not take into account the timing of the injury if the child is born alive and goes on to state that "[i]f the child is not born alive, there is no liability unless the applicable wrongful death statute so provides." Restatement § 869(2).

Defendant urges us to follow the approach in *Miller,* 905 P.2d at 197, where the New Mexico court held that a child, not viable at the time of injury, is not a "person" under that state's wrongful death act despite being born alive. *Miller* is clearly the minority view.

We conclude that *Pizza Hut of America, Inc. v. Keefe,* 900 P.2d 97 (Colo.1995), while not directly on point, indicates that we should not follow *Miller.* In *Pizza Hut,* the plaintiff was pregnant and alleged that she was forced to work in excess of her physician's restrictions, which caused her child to be born after a six-month (twenty-four-week) gestation period. The child died ten days later. The plaintiff brought a wrongful death action against the employer and two fellow employees. The employer asserted immunity under the workers' compensation law. Our supreme court held that there is no immunity for the wrongful death of the child, stating:

> The petitioners contend that since the mother also claimed an injury in this case, it follows that immunity is grounded upon the employee mother's injury in the workplace. We conclude, however, that regardless of whether the mother was injured, the injury to the child was separate and distinct and subjects the employer to separate liability. In this case, the child's right of action arises out of and on account of her own personal injuries, and not any personal injury suffered by the mother. The mother and child happened to be injured at the same time—the fact that the mother may have been injured, however, is

not a bar to tort recovery for the child or a basis for limiting the child's recovery to the workers' compensation law. The exclusivity provisions do not constitute a bar to a claim asserted by a third-party victim, even though both the employee and the victim were injured together as a result of the same negligent act in a single transaction.

> Legally, the child, when born, stands in the same position as any other non-employee member of the public. Civil actions for recovery of damages for personal injuries to non-employees whose injuries are not derivative of an employee's injuries, including non-employee children of employees, are not affected by the language of [the workers' compensation act].

*Id.* at 101.

While the court did not express an opinion on the precise issue presented here, and was not called upon to do so, it recognized that a child born prematurely is a person separate from the mother who is capable of suing for his or her own injuries.

■ Therefore, we hold that a child who is born alive and subsequently dies is a person within the meaning of our wrongful death statute, and a wrongful death action can be maintained regardless of whether the child was viable at the time of the injury or whether the child was viable at the time of birth.

Finally, we note that the United States Supreme Court in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), a case concerning a person's constitutional right of privacy, recognized the then developing state law with respect to the wrongful death of a child caused by prenatal injuries, stating that "[s]uch an action ... would appear to be one to vindicate the parents' interest and is thus consistent with the view that the fetus, at most, represents only the potentiality of life." 410 U.S. at 162, 93 S.Ct. at 731. We see the case before us as presenting a narrow statutory question, the answer to which has no constitutional implications.

## II. Cross–Appeal: Motions in Limine

Plaintiff argues that the trial court erred by denying several motions in limine prior to

trial. The evidence admitted concerned plaintiff's mental condition, her employment status, her future father-in-law's medical emergency that necessitated the car trip, and the ages of her children. She contends that this information was substantially prejudicial and reduced the noneconomic damages awarded by the jury. We discern no grounds for reversal.

■ A trial court's refusal to exclude relevant evidence pursuant to CRE 401 and 403 will not be reversed on appeal absent an abuse of discretion. *Clough v. Williams Production RMT Co.*, 179 P.3d 32, 37 (Colo.App. 2007). A court abuses its discretion only when its ruling is manifestly arbitrary, unreasonable, or unfair. *Bonidy v. Vail Valley Ctr. for Aesthetic Dentistry, P.C.*, 186 P.3d 80, 85 (Colo.App.2008).

### A. Mental Condition

■ Prior to the accident, plaintiff had been diagnosed as bipolar, and was being treated for that condition at the time of the accident. This information was elicited during direct and cross-examination of plaintiff and was referred to in opening and closing arguments.

In *Johnson v. Trujillo*, 977 P.2d 152 (Colo. 1999), the court held:

> [B]are allegations of mental anguish, emotional distress, pain and suffering, and loss of enjoyment of life are *insufficient* to inject a plaintiff's mental condition into a case as the basis for a claim where the mental suffering alleged is incident to the plaintiff's *physical* injuries and does not exceed the suffering and loss an ordinary person would likely experience in similar circumstances.

*Id.* at 157 (emphasis added).

However, here, plaintiff sought damages for the mental anguish caused by the wrongful death of her son. Thus, her mental state immediately prior to the accident was relevant.

Therefore, we conclude that the trial court did not abuse its discretion in denying plaintiff's motion in limine and admitting evidence of plaintiff's pre-accident psychiatric diagnosis.

### B. Lack of an Emergency, Poverty, and Children

Plaintiff asserts that it was an abuse of discretion for the trial court to deny her motion in limine and permit evidence that (1) her future father-in-law's condition was an "emergency"; (2) she was unemployed and impoverished; and (3) her two older children were of certain ages.

Plaintiff's theory with respect to whether there was an emergency is that if the jury found that there was an emergency, it might conclude that defendant was not negligent under the circumstances. As to her lack of employment and poverty, her theory is that such evidence would make her appear to the jury as less deserving of damages. Finally, while the parties stipulated to the fact she had two older children, plaintiff asserts that disclosing their ages prejudiced her by showing that she had her first child when she was approximately thirteen years old.

Plaintiff does not provide us with citations to the record for any testimony on these matters. In addition, plaintiff has failed to cite to us, and did not cite to the trial court in her motion, any authority for the proposition that the admission of this, or similar evidence, would be an abuse of discretion.

■ From our review of the record there was no testimony as to the emergency nature of the future father-in-law's condition. Therefore, plaintiff cannot show prejudice with respect to the denial of the motion in limine. *Edge Telecom, Inc. v. Sterling Bank*, 143 P.3d 1155, 1161 (Colo.App.2006) (citing C.R.C.P. 61; *City of Colorado Springs v. Givan*, 897 P.2d 753, 761 (Colo.1995)).

■ We have located testimony relating to plaintiff's lack of employment or poverty, her age, and the ages of her two older children. The testimony was brief, dignified, and non-argumentative. As to her poverty and lack of employment, the testimony was in the context that plaintiff was caring for her other children, and it was not mentioned in defendant's closing argument. There was argument as to the older children in the context that plaintiff had her hands full raising them

and that she was able to have additional children. We conclude that it is highly unlikely that this evidence, brief as it was in the context of a lengthy and emotional trial and the related argument, adversely impacted the verdict. Therefore, we conclude that any abuse of discretion in permitting it was harmless. *Id.*

The judgment is affirmed.

Judge GRAHAM concurs.

Judge J. JONES specially concurs.

Judge J. JONES specially concurring.

I concur in the majority opinion. I write separately, however, because I believe the issue whether plaintiff can maintain a wrongful death claim for the death of her child can be resolved more simply than the majority has resolved it.

Section 13–21–202, C.R.S.2007, provides, in relevant part, that a wrongful death claim may be brought for "the death of a person" if that person could have maintained an action for personal injuries "if death had not ensued...."

The issue here therefore turns on whether plaintiff's child was a "person." That term is not defined by the statute. Accordingly, we must give that term its plain and ordinary meaning. *Concerned Parents of Pueblo, Inc. v. Gilmore,* 47 P.3d 311, 313 (Colo.2002); *Golden Animal Hosp. v. Horton,* 897 P.2d 833, 836 (Colo.1995). If the language of the statute is unambiguous, we must enforce it as written. *Premier Farm Credit, PCA v. W-Cattle, LLC,* 155 P.3d 504, 513 (Colo.App. 2006).

The plain and ordinary meaning of "person" is an individual human being. *Webster's Third New International Dictionary* .1686 (2002) ("an individual human being"); *Black's Law Dictionary* 1178 (8th ed. 2004) ("A human being."); *cf. Cruz v. Farmers Ins. Exchange,* 12 P.3d 307, 311–12 (Colo.App.2000) (plain and ordinary meaning of "person" in an insurance contract is "an individual human being") (citing *Random House Webster's Unabridged Dictionary* 1445 (2d ed.1998) ).

It should go without saying that a child born alive is an individual human being. *See*

*Hudak v. Georgy,* 535 Pa. 152, 634 A.2d 600, 603 (1993) ("[T]oday we are reaffirming the unremarkable proposition that an infant born alive is, without qualification, a person.") (holding that wrongful death action may be brought on behalf of a child born alive, though not viable at the time of birth). The child in this case was therefore a "person" within the meaning of section 13–21–202.

The only limitation the statute places on the right to maintain a wrongful death action for the death of a person is that the person would have been able to bring an action for personal injuries if he or she had survived. The statute imposes no condition that the victim be viable at the time of the injury or at the time of the birth, and we must decline defendant's invitation to read into the statute any such condition. *In re Regan,* 151 P.3d 1281, 1287 (Colo.2007); *People v. Cross,* 127 P.3d 71, 73 (Colo.2006); *Sheridan Redev. Agency v. Knightsbridge Land Co., L.L.C.,* 166 P.3d 259, 263 (Colo.App.2007); *see Kalafut v. Gruver,* 239 Va. 278, 389 S.E.2d 681, 684–85 (1990) (stating as follows in holding that a wrongful death action may be maintained for a child born alive but not viable: "[T]he test is not ... whether the decedent could have maintained a personal injury action at the time of defendant's negligence or, stated differently, whether a fetus can maintain a tort action at the time it is injured *in utero.* Rather, the statutory test is whether, had death not ensued, the person could subsequently have maintained a personal injury action. Clearly, the answer to that question is in the affirmative in the case of a live birth.").