The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Logan Lester LAGE, Defendant–Appellee.

No. 08CA0617.

Colorado Court of Appeals,
Div. II.

May 28, 2009.

Rehearing Denied Aug. 6, 2009.

Peter G. Hautzinger, District Attorney, Tammy Eret, Chief Deputy District Attorney, Mark Hand, Deputy District Attorney, Grand Junction, Colorado, for Plaintiff–Appellant.

Douglas K. Wilson, Colorado State Public Defender, Karen N. Taylor, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge ROY.

The People appeal the trial court's order dismissing homicide and other charges against defendant, Logan Lester Lage, arising out of the injury to an unborn child who, following a live birth, died from the injury. We affirm in part, reverse in part, and remand the case for further proceedings.

Defendant, while being pursued at a high rate of speed by a police officer, switched into the oncoming traffic lane to pass another vehicle, resulting in a head-on collision with a vehicle driven by a woman who was then eight and one-half months pregnant. There was an eighty percent abruption of the placenta, which required an emergency cesarean section. The child was delivered alive, but died one hour and nine minutes later. The autopsy report stated:

> The death of this infant was a direct consequence of asphyxia due to placental abruption due to blunt force trauma to the abdomen sustained while this otherwise healthy term infant was alive. The infant was resuscitated at delivery but subsequently expired as a consequence of the prolonged asphyxia. In consideration of the circumstances and the findings of the postmortem examination the manner of death is classified as homicide.

Defendant was charged with eighteen counts, seven of which arose out of the injury or death of the child, to wit: (1) extreme indifference first degree murder, § 18–3–102(1)(d), C.R.S.2008, a class one felony; (2) reckless child abuse resulting in death, § 18–6–401(1)(a), (7)(a)(I), C.R.S.2008, a class two felony; (3) driving under the influence vehicular homicide, § 18–3–106(1)(b)(I), C.R.S.2008, a class three felony; (4) reckless vehicular homicide, § 18–3–106(1)(a), C.R.S.2008, a class four felony; (5) deadly vehicular eluding, § 18–9–116.5, C.R.S.2008, a class three felony; (6) deadly careless driving, § 42–4–1402, C.R.S.2008, a class one misdemeanor traffic offense; and (7) driving under the influence vehicular assault alleging serious bodily injuries to the unborn child, § 18–3–205(1)(b), C.R.S.2008.

Defendant filed a motion to dismiss the counts listing the unborn child as the victim, arguing that an unborn child is not a "person" or "child" within the meaning of the applicable statutes at the time the injuries were inflicted. After receiving briefs from both parties and following a preliminary hearing, the trial court granted defendant's motion as to all charges relating to the unborn child. This appeal followed.

## I. The Homicide Counts

As to the homicide charges, the trial court relied on section 18–3–101, C.R.S.2008, which states, in pertinent part:

As used in this part 1 [homicide and related offenses, §§ 18–3–101 to –107], unless the context otherwise requires:

(1) "Homicide" means the killing of a person by another.

(2) *"Person", when referring to the victim of a homicide, means a human being who had been born and was alive at the time of the homicidal act.*

(Emphasis added.)

Extreme indifference first degree murder, § 18–3–102(1)(d) (person causes death of another); reckless vehicular homicide, § 18–3–106(1)(a) (person causes death of another); and driving under the influence vehicular homicide, § 18–3–106(1)(b)(I) (person causes the death of another), are all part 1 offenses to which the definitions in section 18–3–102(2) apply.

The trial court stated:

The plain language of the definition [of a "person"] could not be any clearer. To qualify as a "person," three conditions must [be] obtain[ed] *at the time of the homicidal act:* (1) the victim is a human being; (2) the victim has already been born; (3) the victim is still alive.

(Emphasis in original.)

The interpretation of statutes is a question of law subject to de novo review. *Hendricks v. People,* 10 P.3d 1231, 1235 (Colo.2000). To determine the legislature's intent, we first look to the plain language of the statute. *C.S. v. People,* 83 P.3d 627, 634 (Colo.2004). When reviewing the language of a statute, we read words and phrases in context and construe them according to their common usage. *Klinger v. Adams County Sch. Dist.,* 130 P.3d 1027, 1031 (Colo.2006) (citing *People v. Yascavage,* 101 P.3d 1090, 1093 (Colo. 2004)). If the statutory language is clear and unambiguous, we do not engage in further statutory analysis. *Klinger,* 130 P.3d at 1031. However, where the language is ambiguous, we may consider other aids to statutory construction, such as the consequences of a given construction, the end to be achieved by the statute, and legislative history. *Id.* A court also must presume that the legislature intended a just and reasonable result and avoid a statutory interpretation

which leads to absurd results. *People in Interest of A.R.M.,* 832 P.2d 1093 (Colo.App. 1992).

We agree with the trial court that section 18–3–101(2) is clear and unambiguous. As the trial court observed, in order for a child to be a "person" under the definition of that term, he or she must have been born and alive at the time of the homicidal act. That is the clear, plain, and unambiguous meaning of section 18–3–101(2). While here the child was alive at the time of defendant's alleged criminal acts, she had not been born. Therefore, she was not a "person" within the meaning of section 18–3–101(2) and, thus, cannot be the victim of a homicide or related crimes.

The prosecution, without citing, acknowledging, or discussing section 18–3–101(2) in the trial court or on appeal, urges us to follow case authority from other jurisdictions, primarily *Cuellar v. State,* 957 S.W.2d 134 (Tex.App.1997), which we find unpersuasive in this context.

In *Cuellar,* the defendant was driving while intoxicated and his vehicle struck another vehicle driven by a woman who was seven and one-half months pregnant. Following the accident, the child was determined to be in distress; a cesarean section was performed; the child lived for approximately forty-three hours following the procedure; and the child died from a brain injury sustained in the accident.

The defendant was charged with "intoxication manslaughter" the elements of which, as pertinent there, were operating a motor vehicle, while intoxicated, and "by reason of that intoxication caus[ing] the death of another by accident or mistake." Tex. Penal Code Ann. § 49.08 (Vernon 1994). Texas defined "another" as "a person," which was defined to include "an individual," which in turn was defined as "a human being who has been born and is alive." Tex. Penal Code Ann. § 1.07(5), (38), (27) (Vernon 1994); *see Cuellar,* 957 S.W.2d at 137.

At the outset of its analysis, the majority in *Cuellar* recognized the distinction at issue here; that is, the phrase "has been born and is alive" had no temporal limitation. Unlike

the Texas statute, our statute has a temporal limitation which speaks directly and clearly to the issue presented here, "at the time of the homicidal act."

The prosecution further urges us to follow a line of cases cited in *Cuellar*, including *State v. Hammett*, 192 Ga.App. 224, 384 S.E.2d 220 (1989); *People v. Bolar*, 109 Ill. App.3d 384, 64 Ill.Dec. 919, 440 N.E.2d 639 (1982); *Jones v. Commonwealth*, 830 S.W.2d 877 (Ky.1992); *State v. Soto*, 378 N.W.2d 625 (Minn.1985); and *People v. Hall*, 158 A.D.2d 69, 557 N.Y.S.2d 879 (App.Div.1990). These cases rely on the common law "born alive" doctrine that we will address subsequently in another context. However, we need not resort to the common law for a definition of "person" when the statute defining that term is clear and unambiguous.

Thus, we conclude that defendant could not be charged with a homicide under title 18, article 3, part 1 of our criminal code for the death of the child who was alive, but not yet born, at the time of the homicidal act. Therefore, the trial court did not err in dismissing the charges of extreme indifference first degree murder, reckless vehicular homicide, and under the influence vehicular homicide.

## II. Non–Homicide Counts

The trial court also dismissed the charges of child abuse involving death, vehicular eluding involving death, careless driving resulting in death, and under the influence vehicular assault. These charges are not within the scope of section 18–3–101(2); therefore, they must be addressed separately.

### A. In Pari Materia

The trial court extended the definition in section 18–3–101(2) to the other offenses, applying the doctrine of in pari materia. Perhaps the leading treatise on statutory construction, N.J. Singer and J.D.S. Singer, *Sutherland on Statutes* § 51:3 (2008), states, in part:

> Statutes are considered to be in pari materia when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object.

The rule of in pari materia is generally used when there is some doubt or ambiguity in the wording of the statute under consideration. Characterization of the object or purpose is more important than characterization of subject matter in determining whether different statutes are closely enough related to justify interpreting one in light of the other.

Here, the trial court used an in pari materia analysis to determine whether a living but not born child can be a victim of crimes not included in title 18, article 3, part 1. We conclude that this aid to construction is not available here because of the explicit limitation on the application of the definitions contained in section 18–3–101.

Our conclusion is bolstered by the analysis in *State v. McKown*, 461 N.W.2d 720 (Minn. Ct.App.1990), *aff'd*, 475 N.W.2d 63 (Minn. 1991). In *McKown*, the child died of a complication from diabetes after the parents placed him in the care of religious practitioners in accordance with their religious beliefs. The parents were indicted for second degree manslaughter and moved to dismiss. The trial court dismissed the indictment after concluding that the second degree manslaughter statute should be read in pari materia with the child neglect statute, which included a spiritual healing and prayer exception. In reaching the opposite conclusion, the appellate court stated:

> Case law is not definitive as to how to determine whether statutes are *in pari materia*, and the leading authority notes:
>
> ["]The guiding principle, however, is that if it is *natural and reasonable* to think that the understanding of members of the legislature or persons to be affected by a statute, be influenced by another statute, then a court called upon to construe the act in question should also allow its understanding to be similarly influenced.["] 2A Sands, *Sutherland Statutory Construction*, § 51.03 at 468 (emphasis added). We conclude, particularly in light of ambiguous legislative history, that it is not "natural and reasonable" to presume the legislature believed the manslaughter statute would be influenced by enactment of the child

neglect statute. We therefore do not find the two statutes to be *in pari materia.* *McKown,* 461 N.W.2d at 723 (emphasis in original).

Sections 18–3–101(1) and (2) were adopted as a part of the repeal and reenactment of the entire criminal code in 1971 and have not been amended since. Ch. 121, sec. 1, § 40–3–101(1)(a)–(b), 1971 Colo. Sess. Laws 418. Likewise, under the influence vehicular assault, under the current nomenclature, dates to the repeal and reenactment of the entire criminal code in 1971, Ch. 121, sec. 1, § 40–3–205, 1971 Colo. Sess. Laws 421 (now codified with amendments at § 18–3–205(1)(b)); however, causing injury while operating a vehicle under intoxication has been a felony in this state since at least 1923. Ch. 95, sec. 2, 1923 Colo. Sess. Laws 256. Vehicular eluding involving death dates from 1986. Ch. 142, sec. 1, § 18–9–116.5, 1986 Colo. Sess. Laws 786. And, finally, reckless child abuse involving death dates to 1979. Ch. 168, sec. 8, § 18–6–401(7), 1979 Colo. Sess. Laws 729.

In light of this pattern of enactment and the lack of any link between the statutes, it is not "natural and reasonable" to presume the General Assembly believed the definition of "person" contained in section 18–3–101(2) would be applied to these "non-homicide" offenses.

Therefore, in pari materia is not, in our view, an appropriate rule of statutory construction to extend the definition of "person" in section 18–3–101(2) beyond those offenses defined in article 18, title 3, part 1.

### B. Vehicular Eluding and Careless Driving Resulting in Death

■ We next turn to reckless vehicular eluding resulting in death, § 18–9–116.5, and careless driving resulting in death, § 42–4–1402, to determine whether a child who is in utero at the time of the offense, is subsequently born alive, and dies as a result of the offense, can be a victim. We conclude the child can be a victim by virtue of the plain meaning of the statutes defining these offenses.

The crime of reckless vehicular eluding is defined as follows:

Any person who, while operating a motor vehicle, knowingly eludes or attempts to elude a peace officer also operating a motor vehicle, and who knows or reasonably should know that he or she is being pursued by said peace officer, and who operates his or her vehicle in a reckless manner, commits vehicular eluding.

§ 18–9–116.5(1), C.R.S.2008. Reckless vehicular eluding is a class five felony, unless it results in bodily injury to another (class four felony), or death of another (class three felony). § 18–9–116.5(2)(a), C.R.S.2008.

The crime of careless driving is defined as follows:

Any person who drives any motor vehicle ... in a careless and imprudent manner, without due regard for the width, grade, curves, corners, traffic, and use of the streets and highways and all other attendant circumstances, is guilty of careless driving.

§ 42–4–1402(1), C.R.S.2008. Careless driving is a class two misdemeanor traffic offense, unless it results in bodily injury or death to another; then it is a class one misdemeanor traffic offense. § 42–4–1402(2).

With respect to each of these offenses, the underlying offense, reckless vehicular eluding and careless driving, is complete without the necessity of an accident, much less an accident causing injury or death. In each instance, the death, while not an element of the underlying offense, aggravates that offense.

Here, there is no dispute that the child was born alive and died. Thus, while there may be a dispute as to whether the accident caused the death, there is no dispute that the child was a "person" at the time of her death which was the result of defendant's committing the offense of eluding the police or careless driving.

Therefore, because the underlying offense was complete prior to the birth and later death of the child, dismissal was not appropriate as to these offenses.

Because we later conclude in Section IIIC that the terms "child" and "person" include a fetus injured in the womb, born alive, and

who subsequently dies of the injuries, we also conclude that for sentencing purposes on vehicular eluding causing death and careless driving causing death those crimes are a class three felony and a class one misdemeanor, respectively.

### C. Reckless Child Abuse Resulting in Death and Under the Influence Vehicular Assault

This leaves us with the question of whether a fetus unborn at the time of the infliction of injury, but who later was born and survived for a period of time, can be a victim of reckless child abuse resulting in death, § 18–6–401(1)(a), (7)(a)(I), and under the influence vehicular assault, § 18–3–205(1)(b)(1). We conclude that it can.

Section 18–6–401(1)(a), defines reckless child abuse causing death:

A person commits child abuse if such person causes an injury to a child's life or health, or permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health, or engages in a continued pattern of conduct that results in malnourishment, lack of proper medical care, cruel punishment, mistreatment, or an accumulation of injuries that ultimately results in the death of a child or serious bodily injury to a child.

Section 18–3–205(1)(b)(1), defines under the influence vehicular assault:

If a person operates or drives a motor vehicle while under the influence of alcohol or one or more drugs, or a combination of both alcohol and one or more drugs, and this conduct is the proximate cause of a serious bodily injury to another, such person commits vehicular assault. This is a strict liability crime.

Unlike vehicular eluding and careless driving resulting in death, the injury or death is an element of these offenses. However, the statutes fail to define "person" or "child."

The definitions of "person" and "child" generally applicable to all statutes unless the text otherwise requires are of no assistance for our purposes. *See* § 2–4–401, C.R.S. 2008. There is no definition of "person" or "child" of general applicability in the Criminal Code. *See* § 18–1–901, C.R.S.2008. And, finally, the definition of "child" in the Children's Code as "a person under the age of eighteen years of age" does not provide any assistance because its application is limited to that code. § 19–1–103(18), C.R.S.2008.

Nor do we find guidance in the general and legal definitions of the terms. A person, as defined in *Black's Law Dictionary* 1178 (8th ed.2004), is "[a] human being." In *Webster's Third New International Dictionary* 1686 (2002), "person" has multiple definitions: "an individual human being" and "a human being, a body or persons, or a corporation, partnership or other legal entity that is recognized by law as the subject of rights and duties." An individual is defined as "[e]xisting as an indivisible entity" and "[o]f or relating to a single person or thing, as opposed to a group." *Black's Law Dictionary* at 789. "Individual" is defined in *Webster's* as "existing as a separate and distinct entity." *Webster's* at 1152. To be "born" is defined as to be "brought forth by or as if by birth." *Id.* at 256. "Birth" is defined as "the act of coming forth from the womb" or "the emergence of a new individual from the body of its parent," and occurs when "the fetus becomes established as an individual physically independent of its mother's body." *Id.* at 221. To be "alive" traditionally means having life, "not dead or inanimate," and "marked by a state in which the organs perform their vital functions." *Id.* at 56.

A clear majority of states criminalize the injuring or killing of a fetus and recognize the fetus as the victim by statute, though the culpability may depend on the viability of the fetus or gestational age. Sandra L. Smith, Note, *Fetal Homicide: Woman or Fetus as Victim? A Survey of Current State Approaches and Recommendations for Future State Application,* 41 Wm. & Mary L.Rev. 1845 (2000); Alan S. Wasserstrom, Annotation, *Homicide Based on Killing of Unborn Child,* 64 A.L.R. 5th 671 (1998). Colorado has no such provisions.

Therefore, we return to the common law "born alive" cases relied upon by the prosecution, *State v. Hammett,* 192 Ga.App. 224, 384 S.E.2d 220 (1989); *People v. Bolar,* 109 Ill.App.3d 384, 64 Ill.Dec. 919, 440 N.E.2d

639 (1982); *Jones v. Commonwealth*, 830 S.W.2d 877 (Ky.1992); *State v. Soto*, 378 N.W.2d 625 (Minn.1985); *People v. Hall*, 158 A.D.2d 69, 557 N.Y.S.2d 879 (N.Y.App.Div. 1990); and *Cuellar v. State*, 957 S.W.2d 134 (Tex.App.1997). These cases apply the common law "born alive" doctrine, which permits a criminal prosecution of the perpetrator when a child is born alive and then dies of the prenatal injuries. *See, e.g., Cuellar*, 957 S.W.2d at 138. While Colorado has abolished common law crimes, § 18–1–104(3), C.R.S.2008, we are not precluded from using the common law as an aid in construing the Criminal Code. *People v. Toler*, 981 P.2d 1096, 1098 (Colo.App.1998), *aff'd*, 9 P.3d 341 (Colo.2000); *People v. Berry*, 703 P.2d 613, 614 (Colo.App.1985), *overruled on other grounds by Beckett v. People*, 800 P.2d 74 (Colo.1990).

In the civil law context, a division of this court has held that a child injured while in the womb but who was born alive, lived, and died is a person within the meaning of Colorado's wrongful death statute. *See Gonzales v. Mascarenas*, 190 P.3d 826 (Colo.App.2008). The division stated:

> [A]child who is born alive and subsequently dies is a person within the meaning of our wrongful death statute, and a wrongful death action can be maintained regardless of whether the child was viable at the time of the injury or whether the child was viable at the time of birth.

*Id.* at 830.

Thus, we conclude that the term "child" used in section 18–6–401(1)(a) and (7)(a)(I) and the term "person" used in section 18–3–205(1)(b)(I) include a fetus who is injured while in the womb, is subsequently born and lived outside the womb, and then died from the injuries sustained.

Therefore, dismissal of the reckless child abuse resulting in death count and the under the influence vehicular assault count was error.

### IV. Conclusion

The trial court's order is affirmed as to dismissal of extreme indifference first degree murder, § 18–3–102(1)(d); reckless vehicular homicide, § 18–3–106(1)(a); and driving under the influence vehicular homicide, § 18–3–106(1)(b)(I).

The trial court's order is reversed as to the dismissal of the remaining charges: reckless child abuse resulting in death, § 18–6–401(1)(a), (7)(a)(I); deadly vehicular eluding, § 18–9–116.5; careless driving causing death, § 42–4–1402; and under the influence vehicular assault, § 18–3–205(1)(b)(1), and the case is remanded for further proceedings with respect to these charges.

Judge CASEBOLT concurs.

Judge CONNELLY concurs in part and dissents in part.

Judge CONNELLY concurring in part and dissenting in part.

The majority holds a Colorado statute precludes charging a defendant with homicide for causing death of an unborn child—regardless of whether death occurs in the womb or after birth as a result of fetal injuries. I agree with this holding, which is compelled by the legislature's definition of a "person" as "a human being who had been born and was alive at the time of the homicidal act." § 18–3–101(2), C.R.S.2008 (emphases added).

The thornier issue is whether a legislature that plainly excluded the unborn from protection of homicide laws intended a different result under child abuse and other criminal statutes penalizing killing or injuring persons. I agree with the majority that the homicide statute's restrictive definition of person does not literally apply to these other statutes. But, unlike the majority, I believe more general legislative intent can be gleaned from this definition. Because the legislature defined "persons" in the homicide statute expressly to exclude the unborn, and because all criminal laws must be strictly construed, we should not adopt a broader construction in interpreting related statutes.

There are three alternatives for whether criminal laws protect the unborn from fetal deaths or injuries: (1) the unborn are always protected; (2) the unborn are protected only if later born alive; and (3) the unborn are

never protected. The prevailing *legislative* trend is to grant full protection to the unborn, perhaps depending on viability at the time of the criminal act. Federally, Congress responded to a notorious California murder of a pregnant woman by passing the Unborn Victims of Violence Act, 18 U.S.C. § 1841. And the large majority of states—at least forty by one recent count—have enacted laws protecting the unborn from a third party's criminal acts. *See* Marka B. Fleming, *Feticide Laws: Contemporary Legal Applications and Constitutional Inquiries,* 29 Pace L.Rev. 43, 51–52 & n. 44 (2008) (citing state statutes).

The majority adopts the second, "born alive" alternative. This doctrine, like most common law, traces back to pre-Revolutionary England. There, while killing within the womb was not homicide, leading English authorities "disagree[d] as to whether a child born alive but who die[d] as a result of an injury sustained *in utero* [could be] a homicide victim." *Williams v. State,* 77 Md.App. 411, 550 A.2d 722, 723–26 (1988), *af'd,* 316 Md. 677, 561 A.2d 216 (1989).

This "born alive" doctrine was widely adopted by American courts lacking specific legislative definition of a "person." *See, e.g., Keeler v. Superior Court,* 2 Cal.3d 619, 87 Cal.Rptr. 481, 470 P.2d 617, 620–24 (1970). The Model Penal Code codifies it by defining a "human being" as "a person who has been born and is alive." MPC § 210.0(1) (1980). Notably, Colorado's homicide code is much more restrictive by adding that the person must have been born and alive "at the time of the homicidal act," § 18–3–101(2).

Even courts adhering to a born alive rule call it "an outdated anachronism often producing anomalous results." *State v. Lamy,* 969 A.2d 451, 460 (N.H.2009) (collecting cases). And most such courts, for policy reasons divorced from statutory text, do not apply the rule to children killed or injured by prenatal criminal acts committed by mothers rather than third parties. *Kilmon v. State,* 394 Md. 168, 905 A.2d 306, 314 n. 3 (2006) (collecting cases). After noting these doctrinal inconsistencies, one state court of last resort has rejected the doctrine entirely and held that all criminal charges require the victim to have been born and alive *at the time of the defendant's conduct. State v. Aiwohi,* 109 Hawai'i 115, 123 P.3d 1210, 1214–25 (2005).

I would not hesitate to extend the full protections of Colorado criminal laws to unborn victims if our legislature, like Congress and most other states, so provided. *See Commonwealth v. Bullock,* 590 Pa. 480, 913 A.2d 207 (2006) (rejecting challenges to such a statute). Even absent legislative guidance, and despite the doctrinal problems, I could join the majority in adopting a born alive doctrine. As the majority ably explains, Colorado's non-homicide statutes could be read to criminalize or raise criminal penalties for fetal injuries as long as a child is later born alive.

The Colorado legislature, however, not only has not expressly extended criminal law protections to the unborn but also has excluded unborn victims from homicide laws— even where they are later born alive before dying. Such a restrictive definition of protected persons is far narrower than the common law doctrine, not to mention the expanded protections in more recent state and federal legislation. We are not empowered to fill legislative gaps in criminal laws. In Colorado, as the majority recognizes, "[c]ommon-law crimes are abolished and no conduct shall constitute an offense unless it is described as an offense" by the legislature. § 18–1–104(3), C.R.S.2008.

There is no indication the legislature intended for crimes other than homicide to cover unborn victims expressly excluded from homicide laws. Nor is there any apparent reason the legislature would have intended such an odd dichotomy. I therefore would apply the interpretive doctrine of *in pari materia* (literally, "in the same matter") under which statutes "deal[ing] with the same subject should be construed harmoniously, to avoid absurdities." *Martinez v. People,* 69 P.3d 1029, 1033 (Colo.2003).

The definition of "person" in Colorado homicide statutes, as applied (or not) to the unborn, deals with the "same subject" as the undefined references to persons in other statutes criminalizing wrongful acts resulting

in death. The homicide statutes expressly defining "person" therefore should be read *in pari materia* with those other criminal statutes. *Cf. People v. Low,* 732 P.2d 622, 629 n. 10 (Colo.1987) (insanity and impaired mental condition defenses, though passed at different times and in different statutes, "concern the same subject matter" and "must be construed *in pari materia* to carry out the intent of the General Assembly" because "both statutes embody principles of criminal responsibility").

The need to restrict criminal liability to areas not expressly covered by legislation is buttressed by the doctrine that "[c]riminal statutes are strictly construed in favor of an accused." *Frazier v. People,* 90 P.3d 807, 814 (Colo.2004). This rule of lenity serves only to resolve, not create, statutory ambiguity. *People v. Swain,* 959 P.2d 426, 431 (Colo. 1998). Read in the entirety of the Criminal Code, however, Colorado statutes outside the homicide context are ambiguous regarding coverage of the unborn.

This is an area that cries out for new legislation. Our General Assembly, unlike Congress and most state legislatures, has precluded homicide prosecutions for killing the unborn without specifically addressing if and how other criminal laws might apply. I would take the one rule that is clear from Colorado criminal law—that the unborn can never be homicide victims—and apply it to similar criminal laws that are anything but clear. Accordingly, given the current state of Colorado laws, I would affirm the district court order dismissing counts based on the death of or injuries to a child who was unborn at the time of the criminal acts.